1999 ME 169

David PAFFHAUSEN

v.

John J. BALANO & Joel J. Balano–
Stott, Personal Representatives of the
Estate of Elizabeth K. Balano.

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 15, 1999.

Decided Nov. 23, 1999.

Joseph Steinberger, Rockland, for plaintiff.

Stephen W. Hanscom, Crandall, Hanscom, Pease and Collins, P.A., Rockland, for defendants.

Before WATHEN, C.J., and
CLIFFORD, RUDMAN, DANA,
SAUFLEY, ALEXANDER, and
CALKINS, JJ.

CLIFFORD, J.

[¶ 1] David Paffhausen appeals from a judgment entered in the Knox County Probate Court (*Emery, J.*) ordering the estate of Elizabeth K. Balano to pay Paffhausen quantum meruit damages based on the reasonable value of the material and labor Paffhausen expended in remodeling a building owned by Balano, offset by the value of Paffhausen's use of the building from 1990 to 1997. Paffhausen does not challenge the amount found by the court to be the reasonable value of the material and labor, nor does he dispute that he has to be charged *some* amount for his use of the building. He contends, however, that the trial court erred (1) in calculating the yearly value of the use of the property, and (2) by charging him for the use of the building for the full seven plus years, when his productive uses of the building were for brief periods of time. Because there is sufficient evidence to support the court's findings, we affirm the judgment.

[¶ 2] This case is before us for a second time, *see Paffhausen v. Balano,* 1998 ME 47, 708 A.2d 269 (*Paffhausen I* ). It began when David Paffhausen decided to open a print shop for artists. In early 1990, he approached Elizabeth Balano about renovating a structure on her property to use as a print shop.[1] The two loosely agreed that Paffhausen would renovate the building and when he began to operate the print shop, he would pay monthly rent of $60.

[¶ 3] Paffhausen began work on the building in April of 1990. The work took longer than expected, and by the fall of 1994, it was not near completion. Given the length and cost of the project, Paffhausen decided to finish one room so that he could earn money by holding art exhibits. Upon completing the one room in December of 1994, he held a seven to ten day art exhibit. At trial, Paffhausen testified that the December 1994 exhibit and a three month exhibit in the summer of 1995 were

the only productive uses he made of the building.

[¶ 4] Despite the length of the project and Paffhausen's use of the front room as an art gallery, Balano did not complain about Paffhausen's progress, and she never asked him to pay any rent. When she died on October 30, 1995, the building was still not completed, and Paffhausen had not paid any rent.

[¶ 5] Following Elizabeth Balano's death, Paffhausen and Balano's personal representatives could not agree to a formal lease arrangement, and when the estate refused to pay Paffhausen for the work he had done on the building, he filed a claim against the estate. The estate disallowed the claim and, pursuant to 18–A M.R.S.A. § 3–806 (1998), Paffhausen filed a petition in the Probate Court for allowance of his claim. The court rejected Paffhausen's quantum meruit claim but concluded that the estate had been unjustly enriched in the amount of $12,300, and awarded damages to Paffhausen in that amount. *See Paffhausen I,* 1998 ME 47, ¶ 4, 708 A.2d at 270. Paffhausen appealed that judgment.

[¶ 6] On Paffhausen's appeal, we agreed with Paffhausen that he had established a quantum meruit claim arising out of his agreement with Elizabeth Balano and the work he did on the building. *See Paffhausen I,* 1998 ME 47, ¶ 11, 708 A.2d at 273. We vacated the judgment for unjust enrichment and remanded the case to the Probate Court for a determination of Paffhausen's damages based on the reasonable value of Paffhausen's labor and materials "offset by the value of [Paffhausen's] use of the building." *See id.,* ¶ 12, 708 A.2d at 273.

[¶ 7] On remand, the court found that the reasonable value of the labor and materials Paffhausen put into the building was $44,240. Neither side challenges that finding. The court further found that Paffhausen should pay a reasonable sum to the estate for his use of the building from

1. The structure was a 24' X 45' open garage.

1990 to 1996. Relying on the trial testimony of certified appraiser Carleton Johnson, the court determined that $20,900 represented the reasonable value of Paffhausen's use of the building, and that that amount would offset the $44,240. The Probate Court later amended its order, increasing the offset by an additional $3,800 because of Paffhausen's use of the building during 1997. The court entered a final judgment in favor of Paffhausen for $19,540.

[¶ 8] In this appeal from that judgment, Paffhausen contends that the trial court erred in determining the *value* it placed on his use of the building. He further contends that he should be charged only to the *extent* that he *actually made good use* of the building, specifically only the brief periods of time when he used it for art exhibits.

[¶ 9] The measure of recovery in quantum meruit cases is "the reasonable value of the services" provided. *See William Mushero, Inc., v. Hull,* 667 A.2d 853, 855 (Me.1995). We review that determination only for clear error. *See id.* That same standard applies to the trial court's determination of the value of Paffhausen's use of the building. We will disturb that finding only " 'if there is no competent evidence in the record' " to support it. *See Down East Energy Corp. v. RMR, Inc.,* 1997 ME 148, ¶ 7, 697 A.2d 417, 420 (quoting *Glidden v. Belden,* 684 A.2d 1306, 1320 (Me.1996)).

[¶ 10] In assigning a value to Paffhausen's use of the building, the court had before it the expert testimony of Carleton Johnson, a certified real estate appraiser. Johnson testified that the yearly rental value of the building when Paffhausen first began the renovation was $1080. That figure represented the use of the building for covered dry storage, and it was based on the rent being received from similarly sized dry storage units. Johnson applied a higher value to the building for the period after it was placed on a new foundation. At that point, the building became suitable as a seasonal office or gallery, and Johnson calculated its yearly rental value at $3,800, again by comparing the building to others of similar size and use.

[¶ 11] Paffhausen contends that Johnson overvalued the building, and that its rental value was substantially less than what Johnson testified to. We cannot vacate the court's finding, however, merely because the court could have come to a different conclusion. *See, e.g., Banville v. Huckins,* 407 A.2d 294, 298 (Me.1979). Johnson's testimony was not inherently incredible. Because there was competent evidence to support it, the trial court's determination of the value of Paffhausen's use of the building was not clearly erroneous.

[¶ 12] In determining the value of Paffhausen's use of the building, the court found that Paffhausen had exclusive control of the building from 1990, through 1997, a period of almost eight years, and assessed him for the use during that entire period. There was evidence that Paffhausen (1) was actively renovating the building until November 1995; (2) never gave notice that he was vacating the building; and (3) did not remove his personal items until December of 1997. Contrary to Paffhausen's contention that he should be charged for the rental value of the building only for brief periods of time, the court's offset against Paffhausen for his use of the building through 1997 is not clearly erroneous.

The entry is:

Judgment affirmed.